UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| GARRY L. HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:07-CV-00109 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Garry L. Hamilton, who is proceeding *pro se*, appeals to the district court from a

final decision of the Commissioner of Social Security ("Commissioner") denying his application

under the Social Security Act (the "Act") for a period of disability, Disability Insurance Benefits

("DIB"), and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.)  For the following

reasons, the Commissioner's decision will be AFFIRMED.

## I. PROCEDURAL HISTORY

Hamilton applied for DIB and SSI in November 2003, alleging that he became disabled

as of January 1, 1999. (Tr. 48-50.)  The Commissioner denied his application initially and upon

reconsideration, and Hamilton requested an administrative hearing. (Tr. 29-38.)  On February 27,

2006, Administrative Law Judge (ALJ) Richard Ver Wiebe held a hearing, at which Hamilton,

who was unrepresented, testified. (Tr. 138-53.)  On October 27, 2006, the ALJ rendered an

unfavorable decision to Hamilton, concluding that he was not disabled despite the limitations

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

caused by his impairments because he could perform a significant number of jobs in the economy. (Tr. 8-17.)

On March 23, 2007, the Appeals Council denied Hamilton's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-4.)  Hamilton filed a complaint with this Court on May 15, 2007, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II.  FACTUAL BACKGROUND

### A.  Background

At the time of the ALJ's decision, Thomas was fifty-two years old, had a high school education, and possessed work experience as a grinder at General Motors, fast food worker, and a stocker in a retail store. (Tr. 15-16, 54, 142.)  Hamilton stated in his DIB application that he became disabled as of January 1, 1999, due to carpal tunnel syndrome; however, he later realized that he does not have carpal tunnel syndrome but rather arthritis and deteriorating disks in his neck. (Tr. 53; Pl's Opening Br. at 1.)  As to his physical symptoms, Hamilton states that he experiences pain "[a]ll through [his] neck and [his] right arm and shoulder." (Tr. 145.)

At the hearing, Hamilton testified that he had been living "in and out" of the Salvation Army since 1999, receiving his room and board in exchange for sorting clothing and working in the kitchen. (Tr. 147, 149-51.)  Prior to his duties at the Salvation Army, Hamilton worked for twenty years at General Motors, but was ultimately fired for "[w]asting time." (Tr. 53, 142.)  In that vein, Hamilton explained that he had problems with alcohol over the years, though he contends that he "worked better" when he drank because it dulled his pain. (Tr. 142-44.) Hamilton states that since he stopped drinking he can no longer work due to his pain, explaining

2

that in the past he "drank [his] pain away."[2] (Tr. 145, 148-49.)

### B. Relevant Medical Evidence

In December 2003, Hamilton saw Dr. Venkata Kancherla at the request of the state

agency. (Tr. 104-07.)  Hamilton told Dr. Kancherla that his primary complaint was that "[his]

hands hurt and gives [sic] out with a lot of pain." (Tr. 104.)  He explained that he had not visited

a doctor for his pain because he lacked medical insurance, opting instead to simply live with his

pain. (Tr. 104.)  Hamilton stated that he was independent with his daily household chores though

he had to perform them more slowly because of the pain in his hands. (Tr. 104.)  Despite

Hamilton's complaints of pain, his physical examination was essentially normal, and there was

no objective sign of carpal tunnel syndrome. (Tr. 105-07.)  He had slightly decreased right hand

grip, but normal muscle tone and no wasting or atrophy of the hand muscles. (Tr. 106.)

In January 2004, Dr. A. Lopez, a state agency physician, reviewed Hamilton's medical

record, including Dr. Kancherla's findings, and concluded that Hamilton remained capable of

performing light work.[3] (Tr. 108-15.)  Dr. Lopez's opinion was later affirmed by a second state

agency physician. (Tr. 115.)

In February 2004, Hamilton visited the emergency room with complaints of right

shoulder pain. (Tr. 124-25.)  Upon physical examination, Hamilton had "fairly full range of

---

[2] Hamilton explains that he started to stop drinking in 1998, though he binged occasionally after that time. (*See* Tr. 143; Pl.'s Reply Br. at 1-2.)  Hamilton states in his reply brief that he has not had a drink in the past three years. (Pl.'s Reply Br. at 2.)

[3] The Social Security Administration defines "light work" as jobs that involve "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567, 416.967.

motion" though he expressed some pain upon rotation; his physical examination and x-rays of his shoulder were essentially normal. (Tr. 124-25.)  He was diagnosed with a right shoulder strain, prescribed medication, and advised to return if his symptoms worsened. (Tr. 124-25.)

In April 2004, Hamilton was involved in an accident while he was a passenger on a bus and visited the emergency room three days later complaining of neck pain and ringing in his ears. (Tr. 119-22.)  He rated his neck pain as a "ten" on a ten-point scale with "ten" being the most painful; he denied having any previous neck problems. (Tr. 119-22.)  Upon physical examination, the physician observed that Hamilton was twisting, rotating, flexing, and extending his neck, noting that Hamilton had "excellent range of motion." (Tr. 119-22.)  His physical examination and x-rays were normal. (Tr. 119-22.)  He was diagnosed with an acute neck strain and ringing in the ears. (Tr. 119-22.)

In August 2004, Hamilton underwent right elbow x-rays, which revealed some mild bony spurring but no evidence of acute fracture or dislocation. (Tr. 116-17.)  Disk spaces were well preserved, and x-rays of his right wrist were normal. (Tr. 116-17.)

In February 2006, Hamilton visited Dr. Michael Thieken at the orthopaedic clinic at St. Joseph Hospital, complaining of headaches and neck pain that radiated down his right shoulder. (Tr. 127-29.)  He denied experiencing any numbness or tingling in his upper or lower extremities, problems with ambulation, or difficulty with fine finger movements. (Tr. 127-29.) On physical examination, Hamilton displayed limited flexion and extension of his cervical spine, full shoulder strength, and intact sensation. (Tr. 127-29.)  Cervical x-rays revealed only mild osteoarthritis and mild degenerative disk disease, but well-maintained disk spaces. (Tr. 127-29.) Dr. Thieken diagnosed Hamilton with neck pain, recommended that he take Naprosyn, and gave

4

him exercises for his cervical spine, explaining that there was nothing surgically that could be done. (Tr. 127-29.)  Dr. Thieken also thought physical therapy would be helpful, but Hamilton stated he could not afford it. (Tr. 127-29.)

In October 2006, Hamilton was treated for a cold at the emergency room. (Tr. 134-36.) His neck was noted to be supple and non-tender during the physical examination. (Tr. 134-36.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.*  Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).  Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV.  ANALYSIS

### A.  The Law

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On October 27, 2006, the ALJ rendered his decision. (Tr. 8-17.)  The ALJ found at step

one of the five-step analysis that though Hamilton reported some work activity in 2000 and

2001, he had not engaged in substantial gainful activity since his alleged onset date. (Tr. 13.)

The ALJ proceeded to step two where he concluded that Hamilton's complaints of reduced grip

strength, early arthritis of his cervical spine, and back pain constituted severe impairments. (Tr.

14.)  At step three, he determined that Hamilton's impairment or combination of impairments

was not severe enough to meet a listing. (Tr. 14.)  Before proceeding to step four, the ALJ

determined that Hamilton's testimony of debilitating limitations was "not entirely credible" and

that he had the RFC to perform light work. (Tr. 14.)

Based on this RFC, the ALJ concluded at step four that Hamilton could not perform his

past relevant work. (Tr. 15.)  The ALJ then proceeded to step five where he determined that,

based upon the grid rules authorized by 20 C.F.R. §§ 404.1569 and 416.969, Hamilton could

perform a significant number of jobs within the national economy. (Tr. 16.)  Therefore,

Hamilton's claim for DIB and SSI was denied. (Tr. 16.)

### C. Substantial Evidence Supports the ALJ's Decision

As far as we can ascertain from his briefs, on appeal Hamilton seems to be challenging

the ALJ's finding that his complaints of debilitating pain were "not entirely credible" and,

ultimately, the ALJ's conclusion that he had the RFC to perform light work.[5]  Hamilton's

---

[5] Hamilton does not argue that his waiver of counsel was invalid, and thus any argument in this respect has been waived. *See Leonard v. Barnhart*, No. 06-C-0207-C, 2006 WL 3523103, at *14 (W.D. Wis. Dec. 4, 2006) (emphasizing that claimant had waived argument by failing to raise it in her opening brief) (citing *United States v. Kelley*, 446 F.3d 688, 692 (7th Cir. 2006))).  Furthermore, even if Hamilton had advanced this argument, the record

challenge, however, is unsuccessful.

### 1.  The ALJ's Credibility Determination Will Not Be Disturbed

Because the ALJ is in the best position to evaluate the credibility of a witness, his

determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir.

2000).  If an ALJ's determination is grounded in the record and articulates his analysis of the

evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see*

*Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and

logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th

Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at

435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's

credibility determination because the ALJ's decision was based on "serious errors in reasoning

rather than merely the demeanor of the witness . . . . ").

Here, the ALJ concluded that while Hamilton's impairments could reasonably be

expected to produce the alleged symptoms, Hamilton's statements about the intensity,

persistence, and limiting effects of these symptoms were "not entirely credible." (Tr. 14.)  In

making this determination, the ALJ explained that the objective medical evidence does not

support Hamilton's allegations of disability. *See* 20 C.F.R. § 404.1529(c)(2) (considering the

objective medical evidence in analyzing claimant's subjective allegations); SSR 96-7p; *see also*

*Luna v. Shalala*, 22 F.3d 687, 690-91 (7th Cir. 1994).  More specifically, he pointed out that

---

does not suggest that his waiver was invalid. (*See* Tr. 9, 11, 19, 26-28, 30, 36, 140); *see generally Binion v. Shalala*,
13 F.3d 243, 245 (7th Cir. 1994) (stating that to ensure a valid waiver, the ALJ must explain to a *pro se* claimant "(1)
the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency
arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of
fees").

Hamilton's x-rays showed only mild degenerative arthritis of the cervical spine, no evidence of

significant bony foraminal encroachment, and that the cervical disk spaces were normal. (Tr. 15.)

Furthermore, the ALJ observed that Hamilton's most recent orthopaedic evaluation indicated

that he had full range of motion and strength in his shoulders bilaterally, no numbness or tingling

in his upper or lower extremities, and no difficulty with fine finger movements. (Tr. 15.)

The ALJ also considered the type of medication and treatment that Hamilton used to

relieve his pain. *See* 20 C.F.R. § 404.1529(c)(3) (considering a claimant's use of medication and

treatment measures as two factors in analyzing claimant's subjective allegations); SSR 96-7p;

*see generally Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995).  For example, he considered

that Hamilton took a prescription-strength muscle relaxant, as well as Tylenol. (Tr. 14.)  He also

noted that Hamilton for the most part had been unable to afford medical treatment because he did

not have insurance. (Tr. 14); *see generally* SSR 96-7p (stating that an ALJ "must not draw any

inferences about an individual's symptoms and their functional effects from a failure to seek or

pursue regular medical treatment without first considering any explanations that the individual

may provide, or other information in the case record, that may explain infrequent or irregular

medical visits or failure to seek medical treatment").

Moreover, the ALJ also considered that Hamilton performed activities of daily living,

such as doing laundry and household chores at the Salvation Army (including sorting clothing

and overseeing the kitchen), that were consistent with light work activities and thus inconsistent

with his allegations of total disability. (Tr. 15); s*ee* 20 C.F.R. § 404.1529(c)(3) (considering a

claimant's activities of daily living as a factor in analyzing claimant's subjective allegations);

SSR 96-7p; *see also Schmidt*, 395 F.3d at 746-47 (discounting the credibility of claimant's

9

testimony of debilitating limitations because, among other things, his performance of daily

activities was not significantly restricted); *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)

(upholding ALJ's credibility determination where claimant's allegations were "untenable" when

contrasted with his reported daily activities and relevant medical evidence).

In sum, the ALJ built an accurate and logical bridge between the evidence and his

conclusion that Hamilton's testimony was "not entirely credible," considering the important

evidence of record and allowing this Court to adequately track his reasoning. *See Diaz v. Chater*,

55 F.3d 300, 307-08 (7th Cir. 1995); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).

Consequently, the ALJ's credibility determination will not be disturbed.

2.  The ALJ Did Not Err When Assigning Hamilton an RFC for Light Work

The determination of a claimant's RFC is an issue reserved to the Commissioner. *See* 20

C.F.R. § 404.1527(e).  However, "RFC assessments by State agency medical or psychological

consultants or other program physicians or psychologists are to be considered and addressed in

the decision as medical opinions from nonexamining sources about what the individual can still

do despite his or her impairment(s)." SSR 96-7p.  Because the RFC "is the application of a legal

standard . . . to the medical facts," it is "entitled to substantial deference," though "not as much

deference as a determination of credibility . . . would be entitled to." *Peterson v. Chater*, 96 F.3d

1015, 1016 (7th Cir. 1996).

Here, when assigning Hamilton an RFC the ALJ relied upon the opinion of Dr. Lopez,

who reviewed Hamilton's medical record and concluded that he had the ability to perform light

work despite the limitations caused by his impairments. (Tr. 14-15); *see generally Micus v.

Bowen*, 979 F.2d 602, 608 (7th Cir. 1992) (noting that a consulting physician "may bring both

impartiality and expertise" to the case (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985))).  More specifically, the ALJ noted that Dr. Lopez relied upon the objective clinical findings of Dr. Kancherla when opining about Hamilton's RFC.  For example, the ALJ observed that Dr. Lopez considered Dr. Kancherla's findings that Hamilton had ten kilograms of grip strength on the right and twenty kilograms of grip strength on the left, that he had normal muscle tone and strength scoring 5/5, and that he had no wasting or atrophy of his hand muscles. (Tr. 15.)  The ALJ also noted that Dr. Lopez relied upon Dr. Kancherla's finding that Hamilton's dexterity was normal.[6] (Tr. 15.)

Moreover, the ALJ was correct when he noted that "[t]here is [no] treating source or other medical opinion contrary to the RFC assessment rendered by Dr. Lopez" and that "there is no objective medical evidence that is inconsistent with the assessment by Dr. Lopez." (Tr. 15.)  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(d)(4); *see generally Smith v. Apfel*, 231 F.3d 433, 440-41 (7th Cir. 2000).  Considering that no other medical source of record even opined about Hamilton's RFC, *see Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." (citing 20 C.F.R. § 404.1512(c))), the ALJ was indeed entitled to rely upon the opinion of Dr. Lopez in determining Hamilton's RFC.

In sum, Hamilton's vague assertion that the ALJ erred when assigning his RFC is without

---

[6] Furthermore, though Dr. Kancherla noted Hamilton's history of alcohol abuse, he did not list it as one of Hamilton's medical problems or recommend a mental evaluation. (*See* Tr. 104-07.)  In fact, Hamilton did not even allege alcoholism as a reason for his disability in his DIB application, stating in his reply brief that he had not had a drink in almost three years. (Tr. 53; Pl's Reply Br. at 2.)  In any event, since the ALJ did not find that Hamilton was disabled, there was no need for the ALJ to determine whether Hamilton's alcoholism was a "contributing factor material to the determination of disability." 20 C.F.R. § 404.1535.

11

merit.  Indeed, the ALJ properly considered the evidence of record when determining Hamilton's

RFC, and substantial evidence supports his conclusion that Hamilton could perform light work.[7]

## V.  CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED.  The

Clerk is directed to enter a judgment in favor of the Commissioner and against Hamilton.

SO ORDERED.

Enter for this 7th day of November, 2007.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[7] Furthermore, Hamilton does not challenge the ALJ's step three finding that he did not meet a listing or the ALJ's step five finding that a significant number of jobs existed in the economy that he was capable of performing. Thus, any argument with respect to either of these issues is waived. *See Kelley,* 446 F.3d at 692; *Leonard*, 2006 WL 3523103, at *14.